UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **WILLIAM E. MIKE** : | **CIVIL ACTION NO.** |
| Plaintiff : | |
| : | |
| v. : | **3: 03 CV 539 (DJS)** |
| : | |
| **SAFECO INSURANCE COMPANY** : | |
| **OF AMERICA** : | |
| Defendant : | **OCTOBER 14, 2003** |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL AND
REQUESTS FOR PRODUCTION**

**I.     INTRODUCTION**

Defendant, in its Motion to Compel and Request for Production, dated August 29, 2003, requested information and documents regarding Plaintiff's medical history, litigation history, and employment history. Defendant also requested a copy of the fee agreement entered into by Plaintiff with the undersigned. As Defendant requests information and documents that are irrelevant and immaterial to the instant litigation and are not calculated to lead to the discovery of admissible evidence, Defendant's requests should be denied.

**II.    BACKGROUND**

From April, 2000 until December, 2002, Plaintiff, William Mike, worked as a Claims Field Representative for the Defendant, Safeco Insurance Company of America. Following his termination on December 2, 2002, Plaintiff filed a two count Complaint alleging wrongful discharge. Count One alleges that Defendant violated Connecticut's "Whistleblower" statute, Conn. Gen. Stat. § 31-51m, when it terminated Plaintiff's employment in retaliation for

contacting the Connecticut Department of Labor regarding a proposed change in Defendant's compensation policy that would have violated Connecticut law. Count Two alleges that Defendant's decision to terminate Plaintiff's employment was contrary to public policy.

On May 23, 2003, Defendant served its first set of interrogatories and request for production upon Plaintiff. On July 24, 2003, Plaintiff provided his responses and objections to Defendant's discovery requests. Defense counsel and the undersigned exchanged correspondence regarding the outstanding discovery issues in August, 2003. As counsel could not resolve the issues independently, Defendant filed its Motion to Compel on August 29, 2003. Plaintiff, through his undersigned counsel, hereby opposes Defendant's Motion.

### III. DISCUSSION

#### A. Plaintiff's Medical History is Not Discoverable.

Defendant requests, in Interrogatory No. 7 and Request for Production No. 29, specific information regarding Plaintiff's medical history for the past ten years and any treatment he has received from a mental health professional at any time in his life. Defendant argues that, by claiming emotional distress damages as a result of his termination, Plaintiff introduced his medical history, both physical and mental, as an issue in this litigation and therefore this information is discoverable. A simple claim for emotional distress as a result of wrongful termination, however, does not justify such broad disclosure and intrusion into Plaintiff's medical history. Defendant's request therefore should be denied.

In Connecticut,[1] "all communications [with a psychologist] shall be privileged and a psychologist shall not disclose any such communications unless the person or his authorized representative consents to waive the privilege and allow disclosure." Conn. Gen. Stat. § 52-146c(b). *See also* Conn. Gen. Stat. § 52-146d (same for psychiatrist). In addition,

> a physician or surgeon . . . shall not disclose (1) any communication made to him by, or any information obtained by him from, a patient . . . with respect to any actual or supposed physical or mental disease or disorder or (2) any information obtained by personal examination of a patient, unless the patient or his authorized representative explicitly consents to such disclosure.

Conn. Gen. Stat. § 52-146o(a).

The Connecticut Supreme Court has stated that

> the people of this state enjoy a broad privilege in the confidentiality of their psychiatric communications and records; and the principal purpose of that privilege is to give the patient an incentive to make full disclosure to a physician in order to obtain effective treatment free from the embarrassment and invasion of privacy which would result from a doctor's testimony. Accordingly, the exceptions to the general rule of nondisclosure of communications between psychiatrist and patient were drafted narrowly to ensure that the confidentiality of such communications will be protected unless important countervailing considerations require their disclosure.

*Home Insur. Co. v. Aetna Life & Casualty Co.*, 235 Conn. 185, 195, 663 A.2d 1001, 1006 (1995) (internal citations and quotations omitted). If Defendant gains access to Plaintiff's medical history, both physical and mental, simply because he has claimed emotional distress

---

[1] As this case was removed to federal district court on the basis of diversity jurisdiction, any privilege asserted by the parties in the case should be decided in accordance with Connecticut state law. *See* F.R.E. § 501 ("in civil actions and proceedings with respect to an element of a claim or defense as to which state law supplies the rule of decision, the privilege of a witness, person, . . . shall be determined in accordance with State law."); *Vanderbilt v. Town of Chilmark*, 174 F.R.D. 225, 226-27 (D. Mass. 1997).

damages, then the principle of privacy and the policy supporting doctor/patient confidentiality recognized by the Connecticut Supreme Court and the Connecticut General Statutes would be severely undermined.

A plaintiff cannot be said to have placed his emotional history at an issue in a case merely by claiming damages for emotional distress in a wrongful termination or defamation case. See **Sabree v. United Brotherhood of Carpenters**, 126 F.R.D. 422, 426 (D. Mass. 1989) (holding that a plaintiff alleging employment discrimination did not place his mental condition at issue because he only made a "garden variety claim of emotional distress, not a claim of psychic injury or psychiatric disorder resulting from the alleged discrimination"). Such a broad ruling would deter plaintiffs, who do not wish to disclose personal information, from pursuing valid claims for emotional distress and it is doubtful that information relevant to a valid defense would be obtained.

Although not mentioned in its Motion to Compel, Defendant, in its Request for Production No. 30, requested that Plaintiff sign an extraordinarily broad consent form and distribute it to every medical professional from whom he has received treatment *in his entire life*. (Attached hereto as Ex. A.) Defendant is attempting to pry into Plaintiff's personal history without any justification. This is not a personal injury case where a plaintiff's medical history might be a relevant inquiry. This is a wrongful termination case in which Plaintiff is making a standard claim for emotional distress related to that wrongful termination. Simply bringing such a "garden variety" emotional distress claim cannot entitle employers to pry into medical or psychological treatment received several decades ago for condition that have no relationship whatsoever to the present claim. The overwhelmingly broad nature of the authorization sought

4

by Defendant demonstrates that the request is not legitimate, but merely is an attempt to harass and intimidate Plaintiff for having brought this action.

Defendant has put forth no rationale as to why it needs to obtain Plaintiff's entire medical history for the past ten years, why such information could in any way be relevant, or how it could possibly lead to the discovery of admissible evidence. Whether or not Defendant learns that Plaintiff broke his arm six years ago or had bunion surgery nine years ago (both of which are the types of information that would be covered by Defendant's broad discovery requests) will not have any effect on its ability to mount a defense in this case. Plaintiff has alleged wrongful termination under Connecticut's "Whistleblower" statute and public policy wrongful discharge. Plaintiff's medical history is irrelevant to his claim. Defendant's broad, invasive request appears to be nothing more than a classic fishing expedition intended to harass Mr. Mike.

As Defendant's request does not meet the requisite standard for relevance or materiality, Plaintiff should not be obligated to respond to Interrogatory No. 7 and Defendant's Request for Production No. 27 and No. 30 should be denied.

**B.    Plaintiff's Litigation History is Not Discoverable.**

Defendant requests, in Interrogatory No. 13 and Request for Production No. 15, information regarding Plaintiff's involvement in any prior litigation. As such evidence can only be utilized by Defendant to portray Plaintiff as litigious in order to prejudice the jury and is not relevant or material to any of Plaintiff's claims, Defendant's request should be denied.

Defendant has cited no authority to support its claim that Plaintiff's litigation history is discoverable, nor has it presented any rationale under which such evidence would be admissible in this case other than a vague claim that his involvement in prior litigation might, in some

unspecified way, have a bearing on his claim for emotional distress damages. In Connecticut, courts resolve this issue by weighing the relevance of the litigation history against its prejudicial value. *Jenkins v. Kos*, 78 Conn. App. 840, 843 (2003). In *Jenkins*, the Connecticut Appellate Court held that the litigation history of a plaintiff bringing a medical malpractice claim was relevant to the validity of her claim, and therefore was admissible, because the prior lawsuit in question involved the very injury that gave rise to the malpractice claim. *Id.* at 846. Here, Plaintiff has brought a claim for violation of Connecticut's "Whistleblower" statute and wrongful discharge. The facts of any prior lawsuit in which Plaintiff was involved would be neither relevant nor material to the validity of his claim in this case. Whether Plaintiff was involved in a quiet title action ten years ago has no bearing on this case. Further, Defendant's assertion that Plaintiff's involvement in a divorce or disputed custody proceeding might somehow be relevant to his claim for emotional distress damages caused by his illegal termination is further evidence that Defendant is not seeking legitimate discovery, but rather is attempting to pry into Mr. Mike's personal life in an effort to intimidate and harass him.

   Even if Plaintiff had been involved in litigation with a prior employer, such prior litigation would not be admissible in this case. Whether or not Plaintiff has been involved in past litigation, regardless of the validity of that litigation, bears no relationship at all to the validity of this litigation. The only purpose behind seeking such information is a cynical attempt by Defendant to portray Plaintiff as litigious, a "professional plaintiff." By seeking this information, Defendant is doing nothing more than engaging in a fishing expedition to try to locate evidence of "prior bad acts" that can be used to prejudice the jury. Rule 404 of the Federal Rules of Evidence specifically precludes the admissibility of evidence of "prior bad

acts." Furthermore, the relevance of any ancient lawsuit most definitely would be outweighed by its prejudicial value and therefore would not be admissible under Rule 403 of the Federal Rules of Evidence.

As evidence of prior lawsuits, if any, would be overly prejudicial while having no relevance or materiality to any of Plaintiff's claims in this case, Defendant's requests should be denied.

### C. Plaintiff's Employment History is Not Discoverable.

Defendant requests, in Requests for Production Nos. 16-18 and 23, information and documents relating to Plaintiff's employment history for the past ten years. As that request is overly broad and not calculated to lead to the discovery of admissible evidence, Defendant's requests should be denied.

Defendant's principle argument is that the information requested is relevant for purposes of limiting any award of damages that may be awarded to Plaintiff. Defendant argues that the requested documents may reveal that Plaintiff provided misleading or false information to Defendant in his employment application and that if such evidence exists, it would negate Plaintiff's claims for front pay, reinstatement, and back pay from the date of Plaintiff's termination until the date of Defendant's discovery.

Such evidence, if it exists, would be immaterial in this case. Plaintiff obtained new employment eight months after his illegal termination by Defendant. Therefore, he will not be seeking front pay or reinstatement, and his back pay claim will be limited to the eight month period between his illegal termination and his new employment. Since "after acquired evidence" only limits back pay to the date that an employer discovers the evidence, ***McKennon v.***

*Nashville Banner Publishing Co.*, 513 U.S. 352, 362-63, 115 S.Ct. 879, 886-87, 130 L.Ed.2d 832 (1995); *Green v. Coach, Inc.*, 218 F. Supp. 2d 404, 413-14 (S.D.N.Y. 2002), any evidence Defendant discovered at this point would be immaterial to any back pay award. Even if Plaintiff wins a judgment that includes an award of back pay, the back pay award will not be affected by any "after acquired evidence" that Defendant is seeking because the evidence would be obtained after Plaintiff's return to work. Any back pay award will be determined by the dates of his termination and new employment, and any after acquired evidence will be immaterial and irrelevant to the calculation of such an award.

Plaintiff certainly would not be allowed to introduce evidence of Plaintiff's employment history to demonstrate that he is a good worker. There is no reason Defendant should be permitted to use Plaintiff's employment history to portray him as a bad worker. Accordingly, Defendant's Requests for Production Nos. 16-18 and 23 should be denied.

### D. The Fee Agreement Between Plaintiff and the Undersigned is Not Discoverable.

Finally, Defendant requests, in its Request for Production No. 28, that Plaintiff disclose a copy of the fee agreement that Plaintiff entered into with the undersigned. As Defendant's request is irrelevant, immaterial, not calculated to lead to the discovery of admissible evidence, and possibly could have an adverse effect on Plaintiff's ability to litigate his case, Defendant's request should be denied.

Defendant argues that it is entitled to a copy of the fee agreement because Plaintiff will be awarded attorney fees if he obtains a judgment in this case. While the terms of a fee agreement may become relevant once Plaintiff obtains a judgment against Defendant, until that time it is irrelevant and immaterial. Under Connecticut's "Whistleblower" statute, the amount of

attorneys fees to which a plaintiff is entitled is determined by the court after the completion of the trial. Conn. Gen. Stat. § 31-51m(c) ("the court may allow to the prevailing party his costs, together with reasonable attorney's fees to be taxed by the court"). Under the terms of said statute, any such post-judgment application for attorneys fees must be approved by the court. *Schoonmaker v. Lawrence Brunoli, Inc*., 265 Conn. 210, 258, 828 A.2d 64, 97 (2003) ("the amount of attorney's fees to be awarded rests in the sound discretion of the trial court") (quotation and citation omitted). Furthermore, if Plaintiff is unable to secure a judgment against Defendant in this case, there will be no award of fees and the fee agreement will remain irrelevant and immaterial.

> In determining the amount of reasonable attorneys fees, a court
>
> > considers, inter alia, the time and labor spent by the attorneys, the novelty and complexity of the legal issues, fees customarily charged in the same locality for similar services, the lawyer's experience and ability, relevant time limitations, the magnitude of the case and the results obtained, the nature and length of the lawyer-client relationship, and whether the fee is fixed or contingent.

*Schoonmaker*, 265 Conn. at 259. In accordance with that standard, the undersigned could simply submit an affidavit indicating whether he was retained on a fixed, contingency, or hourly basis. At that point, it is the court's discretion as to what an appropriate fee should be in this particular case and the undersigned's fee agreement will not necessarily be a part of the court's determination. *But see* *Sorrentino v. All Seasons Services, Inc*, 245 Conn. 756, 776, 717 A.2d 150, 160 (1998) ("A trial court should not depart from a reasonable fee agreement in the absence of a persuasive demonstration that enforcing the agreement would result in substantial unfairness to the defendant").

9

In addition to its lack of relevance and materiality, a fee agreement, if obtained by a defendant before actually becoming relevant in the case, could adversely effect a plaintiff's ability to pursue his claim. Among other things, a fee agreement indicates whether counsel is working on a flat fee, hourly or contingency basis. For example, if a plaintiff has contracted with counsel on an hourly basis, an unscrupulous defendant might be motivated to "bury" the plaintiff in excessive motion and discovery practice, increasing the number of hours necessary for counsel to work on the case, and thus increasing the attorneys fees owed and imposing pressure on the plaintiff to resolve his claim without proceeding to trial. Accordingly, Defendant's request for a copy of the fee agreement should be denied.

## IV.    CONCLUSION

Defendant has asked this Court to compel Plaintiff to respond to interrogatories and produce documents relating to his medical and psychological history, litigation history, and employment history, and the fee agreement entered into by Plaintiff and the undersigned. Defendant's motion should be rejected in its totality. Defendant's request for Plaintiff's medical and psychological history should be denied because it is overly broad, invasive, and will not lead to the discovery of any relevant or material evidence. Connecticut law specifically protects medical and psychological records from disclosure and Plaintiff cannot be said to have placed his entire medical and psychological history at issue in this case simply by claiming emotional distress damages. Defendant's requests for Plaintiff's litigation and employment history are completely irrelevant and immaterial to the issues involved in this case. Neither a previous lawsuit in which Plaintiff was involved nor any information that could be revealed from ancient employment records has any bearing whatsoever his claim for wrongful termination. Even if

compliance with Defendant's request did lead to after acquired evidence that may have warranted Plaintiff's termination, discovery of such information at this point would not have any impact on an award of damages in this case. Finally, while the fee agreement entered into by Plaintiff and the undersigned may become relevant after Plaintiff obtains a judgment at trial, until then it is irrelevant and immaterial and not calculated to lead to the discovery of any admissible evidence.

                PLAINTIFF,

By: _____
     Anthony J. Pantuso, III
     Hayber & Pantuso, LLC
     221 Main Street, Suite 400
     Hartford, CT 06106
     Juris No: 420475
     (860) 522-8888
     (860) 240-7945 (facsimile)

## **CERTIFICATION OF SERVICE**

      This is to certify that a copy of the foregoing was mailed this date to all counsel and pro se parties of record, including:

Attorney Margaret Strange
Jackson, Lewis, LLP
55 Farmington Ave, Ste. 1200
Hartford CT 06105

                                                          _____
                                                          Anthony J. Pantuso, III