UNITED STATES DISTRICT COURT
for the
DISTRICT OF CONNECTICUT

| | |
|---|---|
| WILLIAM E. MIKE<br>      Plaintiff, | :<br>:<br>: |
| V. | :   CASE NUMBER: 3:03 CV 539 (DJS) |
| SAFECO INSURANCE COMPANY<br>OF AMERICA,<br>      Defendant. | :<br>:<br>:   APRIL 15, 2004<br>: |

## DEFENDANT'S OBJECTION TO PLAINTIFF'S MOTION TO COMPEL DATED MARCH 29, 2004

Pursuant to Local Rule 7(a) of this Court, Safeco Insurance Company of America ("Defendant" or "Safeco") respectfully files its Objection to Plaintiff's Motion to Compel dated March 29, 2004. In his Motion to Compel, Plaintiff seeks to compel responses to Plaintiff's First Set of Interrogatories and Requests for Production. The gravamen of Plaintiff's Motion to Compel is that he is entitled to detailed information about the work performance of other Claims Representatives who worked in Connecticut at anytime during the course of his employment with Safeco.

The information Plaintiff seeks includes extensive and detailed "hard data" about the job performance of other Claims Representatives who were employed with Defendant at any time during Plaintiff's employment. Plaintiff believes he is entitled to this "hard data" despite the <u>complete lack</u> of evidence in the record that Defendant relied on, or even considered, this information in making the decision to discharge Plaintiff. Plaintiff also seeks information about other Claims Representatives who were placed on action plans at anytime during his

employment with the company. As support for his Motion to Compel, Plaintiff states that he is "entitled to discover the circumstances" under which his peers were placed on action plans.

In essence, Plaintiff seeks extensive, highly detailed discovery for an overbroad period of time without even the slightest showing that the requested information has any connection to the claims or defenses in this case. Plaintiff attempts in both his correspondence of March 23, 2004 and his Motion to Compel to justify his fishing expedition by claiming that since he was terminated for "performance reasons," he is entitled to comb through every detail of the performance of every other Claims Representative who worked in Connecticut at any time during Plaintiff's employment, including Claims Representatives who reported to supervisors other than the decisionmaker in this case, Jeff LaFrance. As set forth below, Plaintiff's Motion to Compel seeks information which is overly broad, unduly burdensome and wholly irrelevant to the claims and defenses in this matter. Thus, the Court should deny Plaintiff's Motion to Compel.

I.  BACKGROUND

Plaintiff served his First Set of Interrogatories and Requests for Production on or about February 18, 2004. On March 19, 2004, Defendant served its Reply to Plaintiff's First Set of Interrogatories and Requests for Production. On March 23, 2004, Attorney Pantuso faxed his correspondence of March 23, 2004 to the undersigned counsel for Defendant. In subsequent telephone conversations on March 25, 2004 and March 29, 2004, the parties were able to resolve several, but not all, of their discovery disputes. On April 1, 2004, the undersigned counsel faxed the attached correspondence of April 1, 2004 to Attorney Pantuso confirming their discussions and reiterating the reasons for Defendant's discovery objections. (A copy of counsel's

correspondence of April 1, 2004 is attached as Exhibit A). Plaintiff's Motion to Compel followed.

II. ANALYSIS

    A. The Court Has The Authority To Deny Plaintiff's Motion To Compel

Plaintiff's Motion to Compel should be denied. Under Federal Rule of Civil Procedure 26(b)(1), discovery is limited to "any matter, not privileged, that is relevant to the claim or defense of any party . . . ." Fed.R.Civ.Pro. 26(b)(1). Information which is reasonably calculated to lead to the discovery of admissible evidence is considered relevant for purposes of discovery. Daval Steel Prods. v. M/V Fakredine, 951 F.3d 1357, 1367 (2d Cir. 1991). Upon a showing of good cause, the Court may order "discovery of any matter relevant to the subject matter involved in the action." Fed.R.Civ.Pro. 26(b)(1).

"Courts must be ever vigilant, however, to prohibit parties from conducting general 'fishing expeditions' into areas unrelated to the claims in issue." In re: Perrier Bottled Water Litigation, 138 F.R.D. 348, 351 (D.Conn. 1991). Courts are entrusted with "broad authority under the Federal Rules of Civil Procedure to regulate or preclude discovery where appropriate." Hyundai v. Merchant Marine Co. v. United States, 159 F.R.D. 424, 429 (S.D.N.Y. 1995). "With this authority at hand, judges should not hesitate to exercise appropriate control over the discovery process." Id. (citation omitted). "[C]ourts should not allow parties to roam in the shadow zones of relevancy and to explore matter which does not presently appear germane on the theory that it might conceivably become so." Spina v. Our Lady of Mercy Med. Center, No. 97 Civ. 4661 (RCC), 2001 U.S. Dist. LEXIS 7338, *6 (S.D.N.Y. June 7, 2001)(citation omitted)(Exhibit B).

B.  Plaintiff Is Not Entitled To "Hard Data" Regarding The Job Performance Of Other Claims Representatives

In Interrogatory No. 2 and Requests for Production Nos. 1-10, Plaintiff seeks so-called "hard data" comparing his job performance to that of other Claims Representatives in Connecticut between April 2000 and December 2002.[1] (Mot. Compel., p. 8.) Plaintiff seeks, among other things, the geographic territory of every Claims Representative employed in Connecticut; the number of automobile appraisals performed by each such Claims Representative; the number of cell phone minutes used by each such person; the average physical damage severity for all automobile claims handled by each such person; the percentage of automobile parts repaired and replaced by each such person (the "Repair v. Replace Percentage"); the percentage of OEM parts, aftermarket parts, recycled parts and reconditioned parts used by each such person (the "Parts Usage Percentage"); the average labor rate each such person negotiated with repair shops (the "Average Labor Rate"); the percentage of claims handled in three days by each such person (the "Customer Service Turnaround") and the number of overtime minutes worked by each such person between July 16, 2001 and December 2, 2002.

1.  Plaintiff Was Terminated For Reasons Unrelated To The Hard Data He Seeks

Plaintiff attempts to justify this fishing expedition by claiming that since "Defendant has raised the issue of job performance," he is entitled to the hard data comparing Plaintiff's job performance with that of his peers. (Mot. Compel, p. 8.) As Attorney Pantuso explained in his correspondence of March 23, 2004,

> The interrogatories and requests for production seek information directly related to Mr. Mike's job performance as compared to that of other [Claims Representatives] in Connecticut. This goes directly to your

---

[1] Plaintiff was hired in April 2000 and discharged in December 2002. (Complaint, ¶ 19.)

4

> client's contention that Mr. Mike was terminated for performance reasons, rather than in retaliation for having contacted the Department of Labor. If the objective measures of job performance show that Mr. Mike equaled or exceeded the performance of his peers, your client's position is undercut.

See Affirmation of Anthony Pantuso, ¶ VI. Thus, Plaintiff asserts that he is entitled to the requested "hard data" on the grounds that the information is relevant to whether Defendant's legitimate, non-retaliatory reason for Plaintiff's termination was a pretext for whistleblower retaliation. See Arnone v. Town of Enfield, 79 Conn. App. 501, 507 (2003) (applying McDonnell Douglas burden shifting analysis to claim under C.G.S. § 31-51m and stating, "If the defendant provides a legitimate and non-retaliatory reason for the discharge, the plaintiff must offer some significantly probative evidence showing that the defendant's proffered reason is pretextual . . . .").

Plaintiff's analysis is flawed for several reasons. First, Plaintiff is not entitled to the so-called "hard data" he seeks because there is absolutely no evidence in the record that Defendant relied on any of these performance criteria in deciding to discharge Plaintiff. To the contrary, the record reflects very specific reasons for Plaintiff's termination, which are wholly unrelated to the "hard data" Plaintiff seeks. For example, on October 7, 2002, Mr. LaFrance met with Plaintiff and counseled him about shortcomings in his job performance. Mr. LaFrance prepared a document entitled "Performance Expectations" in which he outlined his concerns. (Exhibit C.) That document outlines five areas where Plaintiff's performance did not meet expectations: 1) contacting new claims within 72 business hours; 2) documenting the file after completing an inspection; 3) preparing estimates consistent with company guidelines; 4) completing an average of four new tasks a day within standard business hours; and 5)

communicating in a professional manner with staff and customers. None of these five areas is related to the discovery Plaintiff seeks.

On October 30, 2002, Mr. LaFrance again met with Plaintiff and placed him on a Action Plan after his performance failed to improve. (Exhibit D.) In the Action Plan, Mr. LaFrance outlined the same five areas of concern regarding Plaintiff's performance and one new issue regarding Plaintiff's failure to obtain pre-approval for overtime work. These areas of concern are repeated in the termination action form in Plaintiff's personnel file, which indicates that Plaintiff was terminated for "Refusal to follow company guidelines in writing estimates. Poor decision making. Poor communication. Poor professionalism." (Exhibit E.) None of the reasons for Plaintiff's termination are in any way related to the "hard data" he seeks and there is nothing in Plaintiff's Motion to Compel which suggests otherwise.

Based on the foregoing, Plaintiff cannot use the requested "hard data" to establish pretext because there is no evidence that Defendant relied on that information as the reason for Plaintiff's discharge. Thus, the information Plaintiff seeks to compel is not relevant to the claims or defenses in this case and is not discoverable.

2.  <u>Plaintiff Has Failed To Establish That The Hard Data He Seeks Is Relevant To The Claim Or Defense Of Either Party</u>

There is no evidence in this case that the decisionmaker, Mr. LaFrance, relied on any of the performance criteria Plaintiff seeks in deciding to discharge Plaintiff. There is no evidence, for example, that Plaintiff was discharged because he did not perform enough automobile appraisals, because he used too many (or not enough) cell phone minutes, because his average physical damage severity was too high, because his Repair v. Replace Percentage was unsatisfactory, because his Parts Usage Percentage was poor, because his Average Labor

Rate was excessive, because his Customer Service Turnaround was slow or because he worked too much overtime. Absent some evidence that Defendant relied on these criteria in making the termination decision, the requested information is not "relevant to the claim or defense of any party" and, thus, is not discoverable under Rule 26(b)(1). Fed.R.Civ.Pro. 26(b)(1). In other words, Plaintiff cannot establish pretext by challenging a reason for his termination that Defendant never proffered and he cannot "undercut" a position that Defendant never took.

Plaintiff's analysis is also flawed because his claim that he was terminated for "performance reasons" is a vastly overbroad characterization of Defendant's reasons for his discharge. Plaintiff apparently believes that by his use of such an overbroad characterization, he has free rein to delve into any topic bearing on the job performance of any Claims Representative employed in Connecticut. As set forth above, the record is bereft of evidence that Plaintiff's termination was related to any of the performance criteria sought in Interrogatory No. 2 and Requests for Production Nos. 1-10.

Despite this clear record, Plaintiff insists he is entitled to "hard data" regarding, among other things, Plaintiff's average physical damage severity, his Repair v. Replace Percentage, his Parts Usage Percentage, and his Average Labor Rate. Plaintiff's attempt to obtain this information, when there is no evidence that the decisionmaker relied on it, should be rejected.

    3.    <u>Plaintiff Is Not Entitled To The Hard Data He Seeks Because His Discovery Requests Are Overly Broad And Unduly Burdensome</u>

Plaintiff's Motion to Compel should also be denied because the information he seeks in Interrogatory No. 2 and Requests for Production Nos. 1-10 is overly broad in its scope. Plaintiff's discovery requests are overbroad because they seek hard data regarding the job

performance of other Claims Representatives before Plaintiff engaged in his alleged whistleblowing activities in July 2002. Information comparing Plaintiff's job performance to that of his peers before his alleged whistleblowing has no bearing on Plaintiff's termination in December 2002, on Defendant's alleged retaliatory motive or on any other claim or defense in this case. The discovery requests are also overbroad because they seek information for a 30 month period during which Plaintiff reported to several supervisors other than the decisionmaker in this case. Comparative data for Plaintiff and his peers for periods of time in which they reported to supervisors who played no role in the termination decision is not relevant to the claims or defenses of either party and is not discoverable. See Smith v. Xerox Corp., 196 F.3d 358, 370-71 (2d Cir. 1999)(evidence about employment decisions made by other supervisors was irrelevant: "Because intent is the critical issue, only a comparison between persons evaluated by the same decision-maker is probative of discrimination."); Shumway v. United Parcel Service, Inc., 118 F.3d 60, 64 (2d Cir. 1997)(affirming summary judgment, in part, because plaintiff's proffered comparators did not report to the same decisionmaker and, thus, were not similarly situated to her).

Finally, Plaintiff's Motion to Compel should be denied because the information he seeks in Interrogatory No. 2 and Requests for Production Nos. 1-10 is unduly burdensome. Plaintiff's seeks voluminous and detailed information about dozens of Claims Representatives employed in Connecticut over a 30 month period. This information is not maintained in a central database and will have to be gleaned from a variety of sources, including outside vendors. This information will also require Defendant to attempt to track down performance data, mileage and cell phone reimbursements and payroll records from several years ago. It is doubtful that much of this information even exists. In short, Plaintiff's discovery requests will require Defendant's

human resources, payroll and information technology departments to expend substantial time and effort to obtain the hard data Plaintiff seeks – without the slightest showing that the decisionmaker in this case relied on, or even considered, this data in deciding to terminate Plaintiff's employment.

      C.     <u>Plaintiff Is Not Entitled To Information Regarding Other Claims Representatives Placed On Action Plans</u>

In Interrogatory No. 4 and Request for Production No. 11, Plaintiff seeks information and documents about Claims Representatives placed on action plans between April 1, 2000 and December 2, 2002. Plaintiff asserts that since he was placed on an action plan in October, 2002, he is "entitled to discover the circumstances under which any of his peers were placed on 'Action Plans,' and whether or not he was treated differently." (Mot. Compel, p. 9.)

Plaintiff's Motion to Compel should be denied because the information he seeks about other employees placed on action plans is not relevant to the claims or defenses of either party in this case. Plaintiff provides no analytical support for his claim that he is entitled to information about other employees placed on action plans simply because he was placed on an action plan. In fact, there is no such support. Information showing that another Claims Representative was placed on an action plan for poor performance, or some other violation of company policy, has nothing to do with Plaintiff's claim that he was placed on an action plan for having contacted the Department of Labor. Plaintiff's attempt to discover this information is a pure fishing expedition in which he seeks, without any justification, to troll through the personnel files of dozens of other Claims Representatives.

Plaintiff's Motion to Compel should also be denied because the information he seeks in Interrogatory No. 4 and Request for Production No. 11 is overly broad. Plaintiff's

9

discovery requests are overbroad because they seek information regarding other employees placed on action plans throughout the entire course of his employment from April 2000 to December 2002. During this period of time, Plaintiff reported to several supervisors other than Mr. LaFrance, the decisionmaker in this case. Claims Representatives who reported to other supervisors are not similarly situated to Plaintiff and are not proper comparators. Thus, information about other Claims Representatives placed on action plans by supervisors who played no role in the decision to discharge Plaintiff is not relevant to the claims or defenses in this case and is not discoverable. See Smith, 196 F.3d at 370-71; Shumway, 118 F.3d at 64.

Finally, Plaintiff's Motion to Compel should be denied because the information he seeks in Interrogatory No. 4 and Request for Production No. 11 is unduly burdensome. Information about employees placed on action plans is not maintained electronically or in a central database. This information will have to be culled from the personnel file of each and every Claims Representative employed in Connecticut between April 2000 and December 2002. Plaintiff's discovery requests will require an extensive search of these personnel files to obtain information which has no identifiable connection with Plaintiff's employment or discharge.

D.  Plaintiff Is Not Entitled To "Hard Data" Regarding His Own Job Performance

In Requests for Production Nos. 15 and 16, Plaintiff seeks documents regarding his job performance prior to August 2, 2002 and after August 2, 2002, respectively. While Defendant provided documents from Plaintiff's personnel file and other sources regarding his job performance, it did not provide the "hard data" regarding things such as the number of automobile appraisals Plaintiff performed; the average physical damage severity for claims he handled; his Repair v. Replace Percentage; his Parts Usage Percentage; his Average Labor Rates; and his Customer Service Turnaround rate.

Plaintiff's Motion to Compel this information should be denied because: 1) it is irrelevant to Plaintiff's discharge as there is no evidence that the decisionmaker relied on this "hard data" in making the termination decision; 2) it is overly broad in that it seeks information for the entire 30 month period of Plaintiff's employment; and 3) it is unduly burdensome in that this information is not readily available and will require Defendant to expend substantial time and effort to obtain.

III. CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Compel dated March 29, 2004 should be denied.

THE DEFENDANT,
SAFECO INSURANCE COMPANY
OF AMERICA

BY: /s/ James F. Shea
Margaret J. Strange (ct 08212)
James F. Shea (ct16750)
JACKSON LEWIS LLP
55 Farmington Avenue, Suite 1200
Hartford, CT 06105
Tel. (860) 522-0404
Fax. (860) 247-1330
email: strangem@jacksonlewis.com
email: sheaj@jacksonlewis.com

## CERTIFICATION OF SERVICE

This is to certify that a copy of the foregoing was sent by first-class mail, postage prepaid, on this 15th day of April 2004, to the following counsel of record:

>Anthony J. Pantuso III, Esq.
>Hayber & Pantuso, LLC
>221 Main Street, Suite 400
>Hartford, CT 06106
>Tel. (860) 522-8888

_____
James F. Shea

H:\Client Folder\S\Safeco\MIKE2\Disc\Obj to Motion to Compel doc
65692