UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| WILLIAM E. MIKE<br>Plaintiff, | : | |
| | : | |
| | : | Civil No. 3:03 CV 0539(DJS) |
| v. | : | |
| | : | |
| SAFECO INSURANCE COMPANY<br>OF AMERICA, | : | October 29, 2004 |
| Defendant. | : | |

## REPLY MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Local Rule 7(d) of this Court, Safeco Insurance Company of America ("Safeco") respectfully submits the following Reply Memorandum of Law in Support of Defendant's Motion for Summary Judgment. Summary judgment is appropriate because Plaintiff admits in his Objection to Defendant's Motion for Summary Judgment ("Objection") that the decision-maker, Jeff LaFrance, did not know of Plaintiff's alleged protected activity of contacting the Department of Labor in August 2002. Plaintiff's failure to establish a casual connection between his protected activity and his discharge in December 2002 is dispositive of this case. Accordingly, Plaintiff's claim under the Connecticut Whistleblower Statute, C.G.S. § 31-51m, and his claim of common law wrongful discharge fail as a matter of law and should be dismissed.

To overcome the lack of any causal connection between Plaintiff's alleged protected activity and his discharge, Plaintiff attempts to confuse the issues by repeatedly asserting that Fran Scalley and Mr. LaFrance worked together in disciplining and discharging him. Plaintiff's assertions are unsupported by the record, which establishes that Mr. LaFrance disciplined Plaintiff and made the decision to terminate him.

Summary judgment is also appropriate because Plaintiff's entire theory of liability – that he was a model employee prior to August 2002 whose performance problems arose only after complaining to Mr. Scalley – is unsupported by the record and is, in fact, contradicted by the admissions contained in Plaintiff's Local Rule 56(a)(2) Statement and by the exhibits submitted in support of his Objection. The undisputed facts establish that the same hostile communication style, poor productivity and excessive overtime which caused Plaintiff's termination in December 2002 existed long before Plaintiff's alleged contact with the DOL in August 2002.

A.    It Is Undisputed That Jeff LaFrance Had No Knowledge Of Plaintiff's Alleged Contact With The Department Of Labor

Summary judgment is appropriate because Plaintiff cannot establish a causal connection between his alleged contact with the DOL in August 2002 and his termination of employment in December 2002. See Arnone v. Town of Enfield, 79 Conn. App. 501, 507 (2003) (prima facie case of retaliation requires a causal connection between the plaintiff's protected activity and his discharge). Plaintiff does not dispute the following critical facts:

- Plaintiff's supervisor, Jeff LaFrance, made the decision to terminate Plaintiff's employment. At the time he made this decision, Mr. LaFrance had no knowledge of Plaintiff's alleged contact with the Department of Labor in August 2002. (L.R. 56(a)(1) Stmnt., ¶ 42.)

- Fran Scalley never informed Mr. LaFrance of Plaintiff's alleged contact with the DOL. (L.R. 56(a)(1) Stmnt., ¶ 43.)

- Caryn Kiernan never informed Mr. LaFrance of Plaintiff's alleged contact with the DOL. (L.R. 56(a)(1) Stmnt., ¶ 43.)

- Plaintiff never informed Mr. LaFrance of his alleged contact with the DOL. (L.R. 56(a)(1) Stmnt., ¶ 44.)

Plaintiff does not dispute the facts set forth in Paragraphs 42, 43, 44, and 45 of Safeco's Local Rule 56(a)(1) Statement. Instead, Plaintiff admitted that he never informed Mr. LaFrance

of his alleged contact with the DOL. (L.R. 56(a)(2) Stmnt., ¶ 44.) Plaintiff further responded that the truth of Paragraphs 42, 43 and 45 were "UNKNOWN" to him.[1] These paragraphs should be deemed admitted based on Plaintiff's failure to controvert them with appropriate citations to the record as required by Local Rule 56(a)(3). D.Conn.L.Civ.R. 56(a)(1); Hill v. Pinkerton, 977 F. Supp. 148, 151 n.1 (D .Conn. 1997)("Since the defendant's Statement of Undisputed Material Facts has not been controverted as required by the rules, they can be deemed admitted.").

Based on the undisputed evidence that Mr. LaFrance did not know of Plaintiff's alleged protected activity when he made the decision to terminate Plaintiff's employment, both Plaintiff's statutory and common law claims fail as a matter of law. See Fenton v. HiSan, Inc., 174 F.3d 827, 832 (6th Cir. 1999 ) (finding that plaintiff failed to establish prima facie case because the decisionmakers were unaware of plaintiff's protected activity).

B.    Plaintiff Cannot Establish Evidence Supporting An Inference Of Retaliation

To overcome the lack of any causal connection between his alleged protected activity and his discharge, Plaintiff attempts to confuse the issues by distorting witnesses' testimony and resorting to wild speculation. First, Plaintiff attempts to link Mr. Scalley to his discharge by repeatedly asserting that Mr. Scalley "consulted" with Mr. LaFrance about Plaintiff's discipline and termination. Second, Plaintiff asserts that he was a model employee whose performance problems arose only after his meeting with Mr. Scalley on August 2, 2002. Plaintiff argues that a

---

[1] In his Local Rule 56(a)(2) Statement, Plaintiff was required to state in separately numbered paragraphs whether he "admitted or denied" each of the facts set forth in the corresponding paragraphs of Safeco's Local Rule 56(a)(1) Statement. D.Conn.L.Civ.R. 56(a)(2). Each denial was required to contain a specific citation to competent witness testimony or other admissible evidence. D.Conn.L.Civ.R. 56(a)(3). The facts set forth in Safeco's Local Rule 56(a)(1) Statement are deemed admitted unless controverted by appropriately supported facts in Plaintiff's Local Rule 56(a)(2) Statement. D.Conn.L.Civ.R. 56(a)(1).

jury could infer, based on the foregoing, that Mr. LaFrance and Mr. Scalley acted together to

"build a file" to get rid of Plaintiff. (Obj. pp. 14-16.) In essence, Plaintiff argues that the jury

should be allowed to disregard the undisputed testimony of the decision-maker, Mr. LaFrance,

and his supervisor, Mr. Scalley, and to speculate its way to finding in favor of Plaintiff.[2]

An inference of retaliation must be supported by a legitimate factual basis. A trier of fact

"cannot infer discrimination from thin air." Norton v. Sam's Club, 145 F.3d 114, 119 (2d Cir.

1998). The Second Circuit has emphasized that an inference of discrimination cannot be drawn

from speculation and conjecture. Instead, the Second Circuit has directed lower courts to

> carefully distinguish between evidence that allows for a reasonable
> inference of discrimination and evidence that gives rise to mere
> speculation and conjecture. This undertaking is not one of guesswork or
> theorization. After all, an inference is not a suspicion or a guess. It is a
> reasoned, logical decision to conclude that a disputed fact exists on the
> basis of another fact [that is known to exist]. Thus, the question is
> whether the evidence can reasonably and logically give rise to an
> inference of discrimination under all of the circumstances.

Bickerstaff v. Vassar College, 196 F.3d 435, 448 (2d Cir. 1999). Given the undisputed evidence

that Mr. LaFrance did not know of Plaintiff's contact with the DOL in August 2002, a jury

cannot conclude that he retaliated against Plaintiff by discharging him in December 2002.

1.    Mr. LaFrance And Mr. Scalley Did Not Consult Regarding Plaintiff

Throughout his Objection, Plaintiff repeatedly asserts that Mr. LaFrance "consulted" with

Mr. Scalley regarding Plaintiff's discipline and subsequent termination. (Obj., pp. 7, 8, 9, 15,

---

[2] In his Objection, Plaintiff also makes factual arguments which are not supported by the citation on which he relies. For example, on page 3, Plaintiff asserts that he used "substantially more" cell phone minutes than his co-workers. Paragraph 12 of the Mike Declaration, to which Plaintiff cites, does not say this and Plaintiff failed to submit evidence of the number of cell phone minutes used by other Field Representatives. On page 15, Plaintiff asserts that he was held to performance standards different from those of his co-workers. Again, the paragraphs of the Mike Declaration to which Plaintiff cites do not say this and Plaintiff failed to submit evidence of the performance standards expected of his co-workers. In fact, Mr. LaFrance's email of October 7, 2002 to all Field Representatives contradicts Plaintiff's claim that he was held to different performance standards. (Mike Dec., Ex. P.) These unsupported factual assertions, and others like them, should be disregarded.

16.) Plaintiff's repeated use of this word to attempt to conflate Mr. LaFrance and Mr. Scalley and to link Mr. Scalley to Plaintiff's termination should be rejected.

There is no evidence that Mr. LaFrance "consulted" Mr. Scalley about Plaintiff's discipline and discharge, no evidence that Mr. Scalley had input into these decisions and no evidence that Mr. Scalley was a decisionmaker.[3] Mr. LaFrance testified that when he prepared the document entitled "Performance Expectations" in October 2002, he approached Mr. Scalley. Mr. LaFrance testified to their conversation as follows:

> Q.    Can you tell me the substance of the conversation you had with Mr. Scalley about this?
> A.    Just that I felt that there was a need for some kind of action with Mr. Mike, to get him on the right track, to make him do his job the correct way. And again, we have a workflow set up so we know how the job is supposed to be done. We know that actually these are the things that are part of the job, just spelled them out, and like I said, he referred me down to HR to make sure everything was done correctly.
>
> Q.    Did Mr. Scalley discuss with you at all his views on Mr. Mike's job performance?
> A.    No. He wanted me to do everything on my own. . . . I was the manager. I needed to take control of the situation.

(LaFrance Dep., pp. 29-30; attached to the Affidavit of Margaret J. Strange as Exhibit 14.)[4]

A similar conversation took place when Mr. LaFrance prepared Plaintiff's 30 day Action Plan. Mr. LaFrance notified Mr. Scalley of the Action Plan and testified as follows:

> Q.    Did you discuss [the Action Plan] with Mr. Scalley before –
> A.    Just the fact that we were going to go to an action plan because there hadn't been improvement.

---

[3] Even if the evidence established that Mr. LaFrance "consulted" Mr. Scalley, it does not change the undisputed fact that when Mr. LaFrance made the termination decision, he had no knowledge of Plaintiff's protected activity.

[4] Mr. Scalley confirmed Mr. LaFrance's recollection of their discussion. He testified as follows:

> Q.    And did you discuss with Mr. LaFrance why he was creating this document for Mr. Mike?
> A.    No, I didn't. You know, basically I tell him like I tell all my unit managers to make sure they partner up with human resources to be sure that everything is covered.

(Scalley Dep. p. 65; attached to the Strange Affidavit as Exhibit 15.)

> Q.    Did you have any other discussions with Mr. Scalley regarding this?
>
> A.    I don't believe so.

(LaFrance Dep., pp. 49-50.)[5]    Once Mr. LaFrance made the decision to terminate Plaintiff's

employment, he notified Mr. Scalley of the decision and testified as follows:

> Q.    Did you discuss [Plaintiff's discharge] with Mr. Scalley at all?
>
> A.    Only that the plan had gone – we followed the action plan, that we've had reviews but not anything in particular about the actual termination.

(LaFrance Dep., p. 56.)[6]    In asserting Mr. LaFrance "consulted" with Mr. Scalley regarding

Plaintiff's discharge, Plaintiff disregards the actual testimony of Mr. LaFrance and Mr. Scalley

and substitutes his own account of what transpired between them.    Plaintiff's account is not

supported by the facts of this case and should be disregarded.

###    2.    Plaintiff's Performance Problems Pre-Dated His Meeting Mr. Scalley

To overcome the lack of any causal connection between his alleged protected activity and

Mr. LaFrance's decision to terminate his employment, Plaintiff also asserts that he was a model

employee whose performance problems arose only after his meeting with Mr. Scalley on August

2, 2002.    (Obj., pp. 3-4, 14-15, 18.)    Thus, claims Plaintiff, his subsequent discipline and

termination could only be the result of impermissible retaliation. Even ignoring the undisputed

fact that Mr. LaFrance had no knowledge of Plaintiff's alleged protected activity, Plaintiff's

---

[5]    Mr. Scalley also confirmed Mr. LaFrance's recollection of their discussions regarding the Action Plan. Mr. Scalley testified, "[The Action Plan] was compiled and asked for my review and again I told Mr. LaFrance to run it by human resources and make sure everything is sufficient." (Scalley Dep., p. 69.)

[6]    Mr. Scalley recalled that with respect to the termination decision, "[Mr. LaFrance] ran it by me and my standard answer to him as it is with everybody else is to partner up with human resources and make sure that all the bases are covered." (Scalley Dep., p. 70.)    The decision to terminate Plaintiff was "a collective decision between human resources and Mr. LaFrance." (Scalley Dep., p. 70.)

claim simply is not true and is contradicted by the admissions contained in Plaintiff's Local Rule

56(a)(2) Statement and by the exhibits submitted in support of his Objection.

Mr. Scalley testified at length regarding his concerns about Plaintiff's performance.

(Mot. Summ. Judg., pp. 5-6.) It is undisputed that Mr. Scalley received several complaints about

Plaintiff's hostile communication style and his lack of professionalism. (L.R. 56(a)(1) Stmnt., ¶¶

9, 10.)[7] It is also undisputed that Mr. Scalley was concerned about Plaintiff's excessive overtime

and poor productivity and that he discussed these issues with Plaintiff both before and after

Plaintiff's alleged contact with the DOL on August 2, 2002. (L.R. 56(a)(1) Stmnt., ¶ 11.)[8]

Plaintiff's claim that he was a model employee is also contradicted by the exhibits he

submitted in support of his Objection. As support for his claim, Plaintiff relies, in part, on a

performance review from 2002. (Mike Dec., Ex. B.) In Plaintiff's 2002 performance review,

which Mr. Scalley signed on May 2, 2002, Plaintiff received an overall performance rating of

"2" which is Safeco's second lowest rating. The review also states, in pertinent part, "Bill will

also need to focus on improved efficiency in the field to enhance volume productivity without

incurring overtime expense." (Mike Dec., Ex. B; emphasis added.) Plaintiff believes this was a

"favorable review." (Obj., p. 4.) Clearly, Plaintiff's poor productivity and excessive overtime

were issues long before August 2, 2002. Plaintiff also neglects to mention his response to Mr.

LaFrance after completing a successful "ride along" with Plaintiff. (Obj., p. 7.) Plaintiff told

---

[7] Plaintiff does not dispute the facts set forth in Paragraphs 9 and 10 of Safeco's Local Rule 56(a)(1) Statement. Instead, Plaintiff states that it is "UNKNOWN" to him whether Mr. Scalley received complaints about his hostile communications and lack of professionalism. (L.R. 56(a)(2) Stmnt., ¶¶ 9, 10.) Given Plaintiff's failure to controvert these facts as required by Local Rule 56(a)(3), Paragraphs 9 and 10 of Safeco's Local Rule 56(a)(1) Statement should be deemed admitted. D.Conn L.Civ.R. 56(a)(1); Hill, 977 F. Supp. at 151 n.1.

[8] Plaintiff also does not dispute that Mr. Scalley was concerned about his excessive overtime. Instead, he states that it is "UNKNOWN" to him what Mr. Scalley's concerns were regarding his performance. (L.R. 56(a)(2) Stmnt., ¶ 11.) Mr. Scalley's concerns and any other undisputed facts contained in Paragraph 11 of Safeco's Local Rule 56(a)(1) Statement should be deemed admitted. D.Conn L.Civ.R. 56(a)(1); Hill, 977 F. Supp. at 151 n.1.

Mr. LaFrance, "Don't expect this to happen again. It was just lucky that I got this many claims done." (LaFrance Dep., p. 27; Mike Dec. Ex. E.)

Mr. Scalley's concerns about Plaintiff's performance – his hostile communications, his excessive overtime, and his poor productivity – are the same issues which eventually led to his termination in December 2002. Plaintiff's claim that his performance only became an issue after August 2002 is belied by his own Objection and should be rejected.

3.    Plaintiff Admits To His Poor Performance

Summary judgment is also appropriate because Plaintiff admits to the performance problems which lead to his termination. Plaintiff admits, for example, that Mr. LaFrance found that he did a poor job inspecting vehicles, appraising damage and documenting his estimates. (L.R. 56(a)(1) Stmnt., ¶ 19.)[9] Plaintiff admits that Mr. LaFrance found a higher percentage of deviances in his estimates and that Mr. LaFrance received complaints about his demeanor, his estimates, and his interactions with customers. (L.R. 56(a)(1) Stmnt., ¶¶ 20, 21.) Plaintiff admits that Mr. LaFrance discussed these issues with him and that he was unable to perform his job duties within normal business hours. (L.R. 56(a)(1) Stmnt., ¶¶ 22, 23.) Plaintiff further admits that he worked almost 30 hours of overtime a month which Mr. LaFrance believed to be approximately four times the overtime anyone else worked. (L.R. 56(a)(1) Stmnt., ¶ 23; Obj., p. 3.) Finally, Plaintiff admits that during his meeting with Mr. LaFrance on November 25, 2002,

---

[9] In response to Paragraph 19 of Safeco's Local Rule 56(a)(1) Statement, Plaintiff admits that his job performance suffered, but alleges that this was because Mr. Scalley and Mr. LaFrance retaliated against him. Plaintiff's attempt to explain the undisputed testimony of Mr. LaFrance rather than dispute it with a citation to the record is inappropriate and should be disregarded. Plaintiff's response to Paragraph 19 is the equivalent of relying on the allegations of his Complaint as proof of retaliation, which is insufficient to create an issue of material fact. Gottlieb v. County of Orange, 84 F.3d 511, 518 (2d Cir. 1996)(A party opposing summary judgment cannot "defeat the motion by relying on the allegations in his pleading, or on conclusory statements."). Plaintiff does the same thing in response to Paragraph 22 of Safeco's Local Rule 56(a)(1) Statement. Both of these paragraphs should be deemed admitted consistent with Local Rule 56(a)(1).

he called Mr. LaFrance a liar, told him that he was full of shit and refused to use non-OEM parts as required by his job. (L.R. 56(a)(1) Stmnt., ¶ 30.)

Despite all of these admissions, including his poor job performance, his gross insubordination, his excessive overtime and, most importantly, his admission that Mr. LaFrance's had no knowledge of his alleged protected activity, Plaintiff asserts that a jury could, nonetheless, find in his favor. Plaintiff's claim is based on nothing more than speculation and conjecture and should be rejected. See Bickerstaff v. Vassar College, 196 F.3d 435, 452 (2d Cir. 1999) ("Statements that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment.").

C.    Plaintiff's Local Rule 56(a)(2) Statement Contains Facts Which Are Neither Disputed Nor Material

At the conclusion of his Local Rule 56(a)(2) Statement, Plaintiff sets forth 12 separate statements of disputed material facts which he believes preclude summary judgment. Each of Plaintiff's alleged disputed facts is either not disputed or not material.

Statements Nos. 1, 2 and 3 regarding the size of Plaintiff's territory are neither material nor disputed. "A fact is material . . . if it might affect the outcome of the suit under the governing law." Regional Economic Community Action Program, Inc. v. United States of America, 294 F.3d 35, 45 (2d Cir. 2002). Issues regarding Plaintiff's territory have nothing to do with whether Mr. LaFrance retaliated against Plaintiff because there is no evidence that Mr. LaFrance knew of Plaintiff's alleged contact with the DOL when he made the termination decision. Moreover, even assuming that Plaintiff had the largest territory, there is no evidence that Mr. LaFrance enlarged Plaintiff's territory after August 2, 2002.

Statement No. 4 regarding Mr. Scalley's receipt of complaints about Plaintiff's job performance is likewise neither material nor disputed. Mr. Scalley did not discharge Plaintiff and, thus, Statement No. 4 is not material to whether Mr. LaFrance retaliated against Plaintiff. It is also undisputed that Mr. Scalley was concerned about Plaintiff's performance problems before August 2, 2002. (L.R. 56(a)(2) Stmnt., ¶ 11; Mike Dec., Ex. B.)

Statements Nos. 5 and 6 regarding the proposed changes to Safeco's drive time policy are likewise neither material nor disputed. Mr. LaFrance did not know of Plaintiff's alleged contact with the DOL. (LaFrance Aff., ¶¶ 2, 4.) Additionally, Safeco does not, for purposes of this motion, contest that Plaintiff believed that the proposed changes to the policy were illegal.

Statement No. 7 regarding Mr. Scalley's treatment of Plaintiff after August 2, 2002 is not material because Mr. Scalley did not discipline or discharge Plaintiff. Additionally, whether Mr. Scalley's treatment of Plaintiff "changed dramatically" after August 2, 2002 is not an identifiable fact which can be proven or disproven. Statement No. 7 is a statement of opinion.

Statements Nos. 8, 9, 10, 11 and 12 are unfounded assertions in which Plaintiff continues to attempt to confuse Mr. Scalley and Mr. LaFrance. For example, there is no evidence that Mr. Scalley authorized or refused to authorize Plaintiff's overtime after Mr. LaFrance was hired. The emails Plaintiff attached to the Mike Declaration as Exhibit M are all directed to Mr. LaFrance. There is also no evidence that Mr. Scalley prepared Plaintiff's Action Plan, increased his work load, changed the size of his territory or made the decision to discharge Plaintiff. Likewise, there is no evidence that Mr. Scalley ever took any "action" against Plaintiff. Plaintiff cannot avoid summary judgment merely by invoking Mr. Scalley's name and attempting to insert him into decisions and events in which he played no role.

10

D.    Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment should be granted.

THE DEFENDANT,
SAFECO INSURANCE COMPANY
OF AMERICA

By:    _____
Margaret J. Strange (ct 08212)
James F. Shea (ct 16750)
Jackson Lewis LLP
55 Farmington Avenue, Suite 1200
Hartford, CT  06105
(860) 522-0404
email: strangem@jacksonlewis.com
email: sheaj@jacksonlewis.com

11

CERTIFICATION OF SERVICE

This is to certify that a copy of the foregoing was sent by first class mail, postage

prepaid, this 29th day of October 2004 to the following counsel of record:

Anthony J. Pantuso, III
Hayber & Pantuso, LLC
221 Main Street, Suite 400
Hartford, CT  06106

Counsel for Plaintiff

James F. Shea

H:\Client Folder\S\Safeco\MIKE2\Pld\MSJ\Reply Memorandum DOC
65692